John P. GOVE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–887C.

United States Claims Court.

Sept. 30, 1991.

Randall E. Wilbert, Nashua, N.H., for plaintiff.

Matthew S. Bode, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Lt. Col. Mark A. Steinbeck and Maj. Diana Moore, Dept. of the Army, Office of the Judge Advocate Gen., of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion to dismiss fol-

lowing transfer from the United States District Court for the District of New Hampshire. The issue is whether the Claims Court has jurisdiction to order reinstatement of an enlisted serviceman retroactive to the date on which he was discharged.

## FACTS

John P. Gove ("plaintiff") entered active duty with the United States Air Force on May 15, 1967, and was honorably discharged on June 6, 1969. On March 3, 1975, plaintiff reenlisted in the military service, this time serving with the United States Army (the "Army"). Prior to reenlistment plaintiff submitted to a required physical examination on February 26, 1975. In the Report of Medical History for the exam, plaintiff stated that he was in good health, but indicated a past history of tuberculosis and sinusitis. Plaintiff also noted that he had received a 30–percent Veteran's Administration Disability rating for allergies. He did not indicate that he was vulnerable to asthma or any of its attendant symptoms.

The Army permitted plaintiff to reenlist with knowledge of plaintiffs 30–percent disability rating. In July 1975 plaintiff began extensive testing for multiple allergies, allergic rhinitis, and asthma. Plaintiff's medical profile of December 4, 1975, noted asthma as a permanent condition.[1] The profile deemed plaintiff "MEDICALLY QUALIFIED FOR duty w[ith] permanent assignment limitations." The limitations were no exposure to grass, weeds, or ragweed pollen. Due to his permanent profile of asthma, plaintiff was deemed unable to perform in his position as Military Occupation Specialty ("MOS"), Light Weapons Infantryman. Consequently, plaintiff was reclassified and assigned as a Personnel Administration Specialist for MOS.

On August 17, 1984, plaintiff was informed that he would be required to appear before a Military Occupational Skill/Medi-

---

**1.** The Army uses a physical profile system to measure a soldier's fitness for duty. This testing system measures six factors that are considered important in evaluating a soldier's func-

tional ability: general physical stamina, upper extremities, lower extremities, hearing and ears, eyes, and psychiatric condition. *See* AR 40–501 (Dec. 1, 1983).

cal Retention Board (the "MMRB").[2] The MMRB ascertains whether soldiers in the Army are capable of acting out the full range of duties required by their MOS position in a worldwide field environment. "[W]orldwide field environment" is defined as the ability to perform a primary military occupational specialty or other specialty physical tasks both in garrison and the field in any geographical or climatic environment wherein the Army has a requirement. *See* AR 600–60 (Oct. 31, 1985). The MMRB found that plaintiff's medical condition prevented him from performing the full range of physical tasks required by his job classification within a worldwide field environment. The board recommended that plaintiff be referred to the Army's Physical Disability Evaluation System (the "PDES").

Subsequently, plaintiff was referred to a Medical Evaluation Board (the "MEBD"), which is one of the prescribed steps in the PDES. The primary responsibility of an MEBD is to diagnose and evaluate medical conditions. Such boards are comprised of at least three medical corps officers who are doctors with detailed knowledge of the directives pertaining to standards of medical fitness and unfitness, disposition of patients, and disability separation processing.

On May 27, 1985, the MEBD diagnosed plaintiff as having exercise-induced asthma and atopic rhinitis. Despite the Pulmonary Medicine Doctor's evaluation that plaintiff be retained in the Army and his profile downgraded, the MEBD's recommendation stated that plaintiff was medically unfit for retention. The MEBD referred plaintiff to

the Physical Evaluation Board ("PEB") for "final determination."[3] A new permanent physical profile was completed for plaintiff on July 9, 1985, stating that plaintiff was "non-deployable worldwide under field conditions." Plaintiff's assignment limitations were altered with the following admonitions: "No crawling, stooping, running, jumping, marching or standing for long periods.... No mandatory strenuous physical activity.... No exposure to grasses, trees or pol[len]. No field duty. Is non-deployable worldwide under field conditions."

Plaintiff's term of enlistment expired in July 1985, but plaintiff requested and received permission to extend the period of active duty status until the completion of his medical processing. On August 2, 1985, an informal PEB convened and determined that plaintiff's medical condition rendered him unfit for duty. The PEB concluded that plaintiff's medical condition and restrictive assignment limitations precluded him from adequately performing the duties required of his position of Personnel Sergeant, grade E–7. The PEB considered the proper disposition of plaintiff's case to be separation from the service with severance pay. Plaintiff did not concur with this result and requested a formal PEB.

The PEB reconsidered the case by informal hearing on October 9, 1985, and found plaintiff fit for retention. The PEB determined that plaintiff's medical impairments had remained essentially the same since he came on active duty and had not interfered with or prevented him from satisfactorily

---

**2.** The MMRB is an administrative screening board that evaluates whether a soldier with a specific medical profile can perform the physical tasks required of him for his job assignment. In determining whether a soldier can ably execute his duties, the MMRB considers, *inter alia*, the standards for medical fitness and the tasks the soldier is expected to perform. If the MMRB determines that the soldier cannot satisfactorily perform in a worldwide field environment, he may be provided with another MOS which the profile does not bar him from performing; or he may be placed in a probationary status to monitor improvement or ability to perform; or he may be referred to the Army Physical Disability System for possible medical

discharge or other separation. *See* AR 600–60 (Oct. 31, 1985).

**3.** A PEB is a fact-finding panel with a minimum composition of two officers and one medical officer or civilian physician. The board is responsible for: (1) investigating the nature, cause, degree of severity, and probable permanency of the disability of the service members; (2) evaluating the physical condition of the members compared against the physical requirements of their particular grades, ranks or ratings; (3) providing a full and fair hearing for the member concerned; and (4) making findings and recommendations required by law to establish the eligibility of a member for disability. *See* AR 635–40 (Dec. 13, 1985).

performing his duties. The PEB then concluded plaintiff was fit for duty under AR 635–40 ¶ 2–1e (Dec. 13, 1985). Paragraph 2–1e provided, as follows:

*Disabilities for which member may not be declared unfit.*

In spite of any other provision of this regulation, after a member has been enlisted, inducted, appointed or commissioned, he will not be declared unfit for military service because of disabilities known to exist at the time of his acceptance for military service that have remained essentially the same in degree since acceptance and have not interfered with his performance of effective military service.

Plaintiff concurred with the finding that he was fit for duty and withdrew his request for a formal PEB hearing.

On January 7, 1986, the United States Physical Disability Agency (the "USAPDA") reviewed the proceedings of the PEB and found plaintiff unfit due to his restrictive profile assignment limitations.[4] The USAPDA noted that plaintiff performed successfully in a garrison environment, but determined that his assignment limitations precluded him from deploying under field conditions. The USAPDA revised the PEB's findings and recommended a 10–percent disability rating and separation with severance pay for plaintiff. Although plaintiff disagreed with the revised findings, he did not choose to submit a rebuttal. The Army Physical Disability Appeal Board (the "APDAB") on March 20, 1986, affirmed the findings of the USAPDA.[5]

On April 25, 1986, the Total Army Personnel Command disapproved plaintiff's request to remain on active duty. On May 13, 1986, plaintiff retracted his waiver of a formal hearing and requested that a formal board be scheduled and that military counsel be appointed to represent him. However, on June 9, 1986, plaintiff, through legal counsel, withdrew his request for a formal hearing of the PEB, agreed with the USAPDA revised findings, and requested release from active duty.

Plaintiff was honorably discharged from the Army on July 11, 1986, as a Sergeant First Class, pay grade E–7, with a 10–percent disability rating. The Army noted "physical disability" as the reason for separation. Plaintiff received $37,036.80 in severance pay.

On May 21, 1987, plaintiff applied to the Army Board for Correction of Military Records (the "ABCMR") for correction of his military records. Plaintiff requested retroactive reinstatement to active duty from his date of discharge with lost pay and allowances.

The ABCMR reviewed plaintiff's records, a current medical evaluation of plaintiff, an advisory opinion from the Office of the Surgeon General of the Department of the Army (the "OTSG"), and an advisory opinion from the USAPDA. The advisory opinion from the OTSG stated that plaintiff's records did not justify routine referral to a PEB. A consultant with the OTSG determined that plaintiff's asthma was not serious enough to warrant his separation from active duty. The consultant considered the appropriate assignment limitation for plaintiff to be "no strenuous physical activity." Under such limitation the consultant considered plaintiff to be medically qualified for continuance of active duty, serving on a worldwide basis.

In its review of plaintiff's application the ABCMR stated the following: "While there appears to be no overt error in the applicant's discharge, it does appear that injustice occurred when the criteria modified by DOD [Department of Defense] Directive 1332.18 of 25 February 1986 ... [were] not

---

**4.** The USAPDA is responsible for operating the PDES and reviews PEB proceedings to ensure that soldiers are given uniform and fair consideration under applicable laws, policies, and directives. *See* AR 635–40.

**5.** The APDAB reviews disability cases sent to it by the Commanding General of the USAPDA.

The role of the APDAB is to determine whether the soldier received a full and fair hearing, whether the proceedings conformed to current law and governing regulations, and whether the findings of the PEB as modified by the USAPDA are supported by substantial evidence. *See* AR 635–40.

considered." Paragraph 3a of the directive provides:

> Inability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of unfitness. Where feasible, consideration should be given to reclassifying the service member to an office or military specialty for which he or she would be fit before disability separation or retirement is accomplished.

After conducting its review, the ABCMR recommended that plaintiff's records be corrected to show that as an exception to established policy, and provided that he was physically and morally qualified, plaintiff was authorized to reenlist within 120 days of receiving notification.[6] The ABCMR denied plaintiff's request for retroactive reinstatement on the basis that no enlistment period remained to which plaintiff could be reinstated. The ABCMR's recommendation was approved on March 26, 1990. Plaintiff reenlisted in the Army on July 11, 1990.

Plaintiff commenced suit against the Secretary of the Army in the United States District Court for the District of New Hampshire. *John P. Gove v. William B. Stowe, Secretary of the Army*, No. 90–232–L (D.N.H., filed May 23, 1990). In a filing of October 2, 1990, the parties stipulated to entry of a voluntary nonsuit without prejudice to three counts of the complaint. The parties stipulated that two other counts, Count I and II, be transferred to the Claims Court pursuant to 28 U.S.C. § 1631 (1988). Section 1631 provides that if a court where an action is filed "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed...." The district court entered an order on No-

vember 1, 1990, transferring Count I and II of plaintiff's complaint to the Claims Court pursuant to section 1631.

Plaintiff filed an amended complaint in the Claims Court on March 11, 1991, alleging that defendant's actions were arbitrary and capricious, an abuse of discretion, and not in accordance with law and regulations. Plaintiff requests correction of his military records to reflect that he was reinstated on active duty effective July 11, 1986; reimbursement for all lost pay and allowances (encompassing direct and consequential damages, including promotions); an order mandating that his monetary award not be set off against any civilian earnings; judgment in his favor in the amount of $750,000.00, together with interest and costs; an award of exemplary and enhanced damages; and reasonable costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988).

Plaintiff points to four separate sources of jurisdiction in support of his present request for judicial review: (1) The Administrative Procedure Act ("APA"), 5 U.S.C. § 704 (1988); (2) the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988); (3) the federal question statute of federal district courts, 28 U.S.C. § 1331 (1988); and (4) violation of his civil rights as guaranteed to him under the U.S. Constitution and 42 U.S.C. § 1983 (1988).[7]

## DISCUSSION

### 1. *Jurisdiction of the Claims Court*

Plaintiff maintains that he was improperly discharged from duty and that the board erred in denying him reinstatement retroactive to the date of his discharge, along with the pay and allowances of his position. Defendant interposes the defense of lack of jurisdiction to review a decision of a military correction board, arguing that al-

---

**6.** Plaintiff contends that no such established policy exists.

**7.** The claim that an infringement of civil rights has transpired rests on the allegation that plaintiff was told on various occasions that he should abandon his attempts to secure administrative action since, if he ever prevailed and returned

to active duty, the Army would thwart his efforts to reach the 20–year retirement mark by trying to eliminate him. Plaintiff alleges comments from a civilian official that were intended to coerce, threaten, or persuade him not to pursue administrative action within the Army or to dissuade him from commencing litigation.

though the Claims Court has jurisdiction to render a decision of a military correction board improper, the court lacks the power to order the relief sought, *i.e.*, reenlistment and attendant backpay.

The Claims Court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1) (1988), allows the court to render judgment upon a claim based on a constitutional provision, a statute, or a regulation that creates a substantive right of an entitlement to backpay. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). *See generally Jagnandan v. United States*, 17 Cl.Ct. 107, 111–12 (1989), *aff'd*, 897 F.2d 538 (Fed.Cir.1990) (Table). To come within the jurisdiction of the Claims Court, plaintiff must base his claim on a statute or regulation that gives him a right to pay beyond the term of his enlistment, or, in effect, gives him a right to reenlist. The Claims Court's predecessor, the United States Court of Claims, dealt with the issue in its customary elegant and direct fashion. In *Austin v. United States*, 206 Ct.Cl. 719, 722–23, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975), the court acknowledged "the cardinal principle" of its jurisprudence that jurisdiction under the Tucker Act, 28 U.S.C. § 1491 ([then] Supp. III 1973), extended only to those cases in which a plaintiff can seek a money judgment. *Austin* involved an enlisted man, who after discharge for misconduct, sought backpay on the ground that a Mexican conviction was an invalid basis for his discharge. The Court of Claims ruled that it lacked jurisdiction to reach the merits, even assuming that plaintiff's claim was worthy, because the court could award neither backpay nor other money compensation on damages. In respect of enlisted personnel, the Court of Claims explained:

> [T]he court has consistently held that since these servicemen have no right to reenlist at the expiration of their current enlistments, the United States has undertaken to pay them only to the end of the current enlistment, unless it properly discharges them prior to that time.

206 Ct.Cl. at 723 (citation omitted); *Clackum v. United States*, 161 Ct.Cl. 34 (1963) (where discharge invalid because of grossest sort of procedural and constitutional irregularity, recovery limited to period between time of illegal discharge and end of enlistment period). An exception to this rule, recognized by the court in *Austin*, is cases wherein the serviceman has "a firm right to reenlist." *Id.* at 724. This exception is not present in the case at bar.

This simple precept has been confused by the decision in *Maier v. Orr*, 754 F.2d 973 (Fed.Cir.1985). *Maier* involved another enlisted servicemember who obtained from a district court a writ of mandamus ordering in 1984 her retroactive reinstatement, with pay, promotions, and other emoluments, effective as of 1977 when she was separated. The appeals court addressed two issues: jurisdiction and the merits. Plaintiff had obtained an amended order eliminating backpay for the period during which she was not on duty and had waived damages in excess of $10,000.00. She argued that the Federal Circuit lacked jurisdiction on two grounds: Her relief by writ of mandamus was not final; her claim was primarily for reinstatement and longevity credit, and only incidently for money.

On jurisdiction the court ruled that the effect of the writ was tantamount to an injunction, review of which was within its jurisdiction, and that plaintiff's claim sought monetary relief from the Government and could not be disguised as a mandamus action. On the merits the appeals court ruled that issuance of the writ was improper because plaintiff had no right to reenlistment. Moreover, even assuming that plaintiff was entitled to any relief, the district court exceeded its authority by ordering relief beyond a current enlistment. In discussing the merits, the Federal Circuit also faulted the district court's intruding in the military's decision to discharge plaintiff on medical grounds. However, the point to be made is that the court ruled on the district court's power to order reinstatement as an issue on the merits. The appeals court did not overrule *Austin;* it

remains good law, and it is dispositive of this case.

*Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990), is not to the contrary. Plaintiff, a reserve officer released involuntarily from active duty, maintained that he was released improperly. A statute entitled the serviceman to pay and allowances as a reserve officer. The Federal Circuit rejected the lower court's ruling that the Claims Court lacked jurisdiction because the military had nonreviewable discretion to release reserve officers from active duty. The appeals court based jurisdiction in the Claims Court on the statute entitling plaintiff to the pay and allowances of the position to which he was appointed absent a valid discharge and denied the serviceman's claim on the merits.

In response to defendant's motion, plaintiff cites 10 U.S.C. § 508(b) (1988), as a predicate for jurisdiction. This statute provides: "A person discharged from a Regular component may be reenlisted in the Regular Army ... under such regulations as the Secretary concerned may prescribe." The statute does not entitle a serviceman to reenlistment nor, necessarily so, to the pay of his position upon any such reenlistment. The language is discretionary. *Williams v. United States,* 541 F.Supp. 1187, 1191 n. 9 (E.D.N.C.1982) ("Given the clarity of the statute authorizing reenlistment solely in the discretion of military officials, *see* 10 U.S.C. § 508(b) (1976), and the explicit recognition that plaintiff's enlistment contract terminates after six years, his previous reenlistments fail to give rise to an entitlement to future reenlistments."); *see Maier,* 754 F.2d at 980 ("No one has an individual right, constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military." (Citations omitted.)).[8] Plaintiff's entitlement cannot be premised on a discretionary act of the Secretary. *Jagnandan,* 17 Cl.Ct. at 112 (jurisdiction lacking to review discretionary release from active duty after term of enlistment expired since serviceman paid up to date of release).

Plaintiff relies on the regulation issued to implement section 508(b). AR 2–20 (July 15, 1985), provides, in pertinent part:

 a. Applicants to whom the disqualifications listed below apply are ineligible for immediate reenlistment and requests for waive will not be submitted....

 ....

 (7) Persons being separated for physical disability with entitlement to receive disability severance pay.

 ....

 b. As an exception, rare and unusual cases determined to be meritorious and worthy of special consideration may be submitted through command channels to CG, MILPERCEN (USAEEA) as an exception to policy under procedures outlined in paragraph 2–19.

In essence, this regulation recognizes and provides for the exceptional case in which the bar should be waived to immediate reenlistment for persons being separated for physical disability. However, the regulation specifies when and how the discretion should be exercised; it does not establish an entitlement.

■ Plaintiff argues that he would have reenlisted promptly but for the bar imposed by the regulation:

**8.** Plaintiff relies on *Ulmet v. United States,* 822 F.2d 1079 (Fed.Cir.1987), as authority for his entitlement to reinstatement, rather than reenlistment. Plaintiff, an officer, relied on a statute that he claimed entitled him to serve two additional years in order to qualify for military retirement. The Federal Circuit reversed the Claims Court's dismissal of plaintiff's claim to "tack on" active training time to his other active duty. On remand the Claims Court awarded reinstatement and backpay. *Ulmet v. United States,* 17 Cl.Ct. 679 (1989), *aff'd,* 935 F.2d 280 (Fed.Cir.1991) (Table). Plaintiff relies on *Ulmet* chiefly to demonstrate that it is within the court's power to award reinstatement as relief. *Ulmet* readily is distinguishable because a statute afforded a period of time within which the court could order reinstatement. Here no question is present that plaintiff did not collect pay and allowances until the end of his enlistment period.

 It should be noted that *Wilson v. United States,* 917 F.2d 529 (Fed.Cir.1990) (en banc), overruled the 1987 *Ulmet* appeals court decision. However, the Federal Circuit in its 1991 *Ulmet* decision held, in its discretion, that its mandate to the lower court to award damages should stand, *Wilson* notwithstanding.

Where the government has admitted its error of wrongful discharge, and where the plaintiff would have been reenlisted but for the discharge as evidenced by the plaintiff's current active duty status, the government should not be able to stand before the Court and argue that the Secretary, in his discretion, can commit an error, admit his·error, but not provide the requested relief....

Plf's Br. filed Aug. 1, 1991, at 20. No easy rejoinder can be made to this characterization. It rings true. Nonetheless, Congress for sound policy reasons has legislated that the military in its discretion determines who can enlist and reenlist and restricts judicial relief to the period of enlistment. That plaintiff surely was as acceptable to reenlist when his enlistment expired in 1986 as he was to reenlist in 1990 cannot provide a basis for expanding the jurisdiction of the court.

### 2. *Estoppel to challenge jurisdiction*

█ Plaintiff argues that defendant is estopped to challenge the Claims Court's jurisdiction after the Department of Justice stipulated before the district court to the effect that jurisdiction lies in the Claims Court. Plaintiff has been put to the time and expense—not to discount the psychological and emotional investment every claimant makes in committing himself to prosecuting a lawsuit—of filing this action and defending against a motion to dismiss precisely because the Government agreed that the Claims Court was the proper forum to hear his claim. This is not a case wherein a plaintiff on his own initiative approached the Claims Court after a federal district court disclaimed jurisdiction. Indeed, plaintiff brought his claim to the Claims Court with the concurrence of the Department of Justice. This court has cautioned before against the Department's predilection to whipsaw a plaintiff on the question of jurisdiction by arguing in one forum that jurisdiction is improper there and then arguing after transfer that the

Claims Court lacks jurisdiction. *See National Steel & Shipbuilding Co. v. United States*, 8 Cl.Ct. 274, 275 (1985). Defendant's conduct may not be excusable, but it is valid legally, since improper exercise of the power to act on a case must be resisted regardless of the cost and inconvenience to the parties.

Jurisdiction is the first consideration in all cases. *Mansfield, Coldwater & Lake Michigan Ry. v. Swan*, 111 U.S. 379, 384, 4 S.Ct. 510, 512, 28 L.Ed. 462 (1884). As the Federal Circuit said in *Maier v. Orr*, neither a plaintiff's nor a district court's mere recitation of a basis for jurisdiction may alter the scope of its statutory mandate, which would apply to that of the Claims Court. 754 F.2d at 982. The Claims Court must decide its own jurisdiction and cannot have it conferred by any other court. *Diamond v. United States*, 228 Ct.Cl. 493, 498, 657 F.2d 1194, 1197 (1981), *cert. denied*, 459 U.S. 831, 103 S.Ct. 70, 74 L.Ed.2d 69 (1982). Finally, a party may object to jurisdiction at any time. *Matson Navigation Co. v. United States*, 284 U.S. 352, 359, 52 S.Ct. 162, 165, 76 L.Ed. 336 (1932). This substantial jurisprudence compels rejection of plaintiff's argument that defendant is estopped to argue against jurisdiction in the Claims Court.

### CONCLUSION

Defendant's motion to dismiss is granted, and the Clerk of the Court shall dismiss the complaint for want of jurisdiction.[9]

IT IS SO ORDERED.

---

9. The court has reviewed carefully all of the statutes or constitutional provisions that plaintiff urges support jurisdiction in the Claims Court. The brief in support of defendant's motion to dismiss fully demonstrates that binding precedents have rejected all of the other arguments concerning jurisdiction not discussed in this opinion.