Joseph Michael LAND, Sr., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–444C.

United States Court of Federal Claims.

Aug. 28, 1998.

Joseph Michael Land, Sr., Chiefland, Florida, pro se.

Matthew D. Lee, with whom were Assistant Attorney General Frank W. Hunger, Director David M. Cohen, Assistant Director James M. Kinsella, all of the U.S. Department of Justice, Washington, DC, and Lieutenant Christopher R. Donovan, Office of the Judge Advocate General, U.S. Department of the Navy, Washington, DC, for defendant.

## OPINION

BRUGGINK, Judge.

This is an action by former First Class Petty Officer Joseph Michael Land, Sr., for military back pay and severance pay pursuant to 37 U.S.C. § 204 and 28 U.S.C. § 1491 (1994). The decision under review is that of the Principal Deputy Assistant Secretary of the Navy for Manpower and Reserve Affairs, issued on behalf of the Office of the Secretary of the Navy, declining to permit plaintiff to re-enlist and denying a request for extension of service. Pending is defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim, or in the alternative, for summary judgment. The court asked for additional briefing and supplementation to the administrative record. The facts are taken from the administrative record, as supplemented. No material issues of disputed fact are present. Oral argument is deemed unnecessary. For the reasons explained below, the court grants defendant's motion to dismiss for lack of subject-matter jurisdiction.

## BACKGROUND

Mr. Land enlisted in the United States Navy on October 24, 1980. On September 28, 1987, Mr. Land re-enlisted in the Navy for a period of three years. He was assigned to the Naval Broadcasting Service detachment in San Diego. Mr. Land's "end of active obligated service" date was designated September 27, 1990. Mr. Land had a history of problems complying with Navy weight and bodyfat standards during his service in the military and particularly toward the end of his period of enlistment.[1] In addition to

---

1. The performance evaluation for the period of December 1, 1987, to November 30, 1988, indicates that Land was "overfat" by Navy standards. The evaluation for the period December 1, 1988, to November 30, 1989, shows that he was within the bodyfat standards, however, the comments on that evaluation stated in part, "[f]or the first ten months of this reporting period, (Plaintiff) continued to measure in excess of 22% bodyfat." In other words, for the first ten months of that reporting period he had not met the Navy's weight standards but had come within standards in the remaining two months. A special evaluation for the period of December 1, 1989, to March 16, 1990, notes Mr. Land measured overfat on three or more consecutive test cycles. Another special performance evaluation was submitted for the period of March 16, 1990,

receiving negative evaluations for failing to meet Navy weight requirements, Mr. Land's performance evaluations addressed other conduct deficiencies as well.[2]

Lieutenant Commander Brian Coley (LtC Coley), Mr. Land's officer in charge, submitted a special performance evaluation on April 18, 1990, revoking Mr. Land's recommendation for advancement and for re-enlistment in the Navy. On April 16, 1990, just prior to receiving the negative recommendation, plaintiff had acknowledged in an administrative remarks entry that he was being retained on active duty until the expiration of his enlistment but would not be allowed to re-enlist.

In a letter dated May 22, 1990, the commander of the Naval Military Personnel Command (NMPC) recommended that the Naval Broadcasting Service, Mr. Land's command, continue him on a mandatory physical readiness program until the expiration date of his enlistment period. The NMPC, which had ultimate discharge or retention authority over Mr. Land, also recommended that if Mr. Land did not meet bodyfat standards at the time his enlistment expired, the command should separate him due to expiration of enlistment with a RE–3T or RE–4 re-enlistment code.[3] *See* Chief of Naval Operations Instruction 1900.lB. On August 9, 1990, plaintiff again acknowledged that he had failed to meet the Navy's minimum bodyfat standards.

Pursuant to a written request to discuss his separation from the Navy at the expiration of his enlistment period, on September

17, 1990, Mr. Land met with the commanding officer (CO) of the San Diego Naval Station.[4] As a result of this meeting, on September 20, 1990, the CO sent a letter to the Naval Broadcasting Service in Washington, D.C., recommending that Mr. Land's command extend his enlistment in the Navy for a period of ninety days to allow him a further opportunity to get within bodyfat standards. The CO further recommended that if Mr. Land met bodyfat standards, the command should grant him a one-year extension, during which time Mr. Land could prove his commitment to maintain his bodyfat. Almost simultaneously, however, the NMPC directed separation at expiration of enlistment, in an administrative message dated September 17, 1990, because Mr. Land had failed to pass the Physical Readiness Test seven consecutive times.

In response to the letter from the CO, on September 25, 1990, the Naval Broadcasting Service in Washington, D.C., indicated its support of the decision of LtC Coley and concurred with the directive of the NMPC. In Mr. Land's last performance evaluation, dated September 27, 1990, LtC Coley again assigned Mr. Land an adverse mark in military bearing for failing to meet the Navy's bodyfat requirements as well as performance deficiencies involving poor working relations with superiors, improper attire, mediocre script writing, and poor supervision. Pursuant to the directive of the NMPC, on September 27, 1990, Mr. Land was separated from the Navy, the stated reason being expi-

---

to April 16, 1990, and it again showed that he failed to meet the Navy's bodyfat requirements.

2. In the performance evaluations of December 1, 1989, to March 16, 1990, and March 16, 1990, to April 16, 1990, he was also assigned adverse marks in reliability and military bearing.

3. An RE–R1 re-enlistment code indicates "recommended for preferred re-enlistment." A serviceman with an RE–1 re-enlistment code is deemed "eligible for re-enlistment." An RE–3T re-enlistment code indicates a serviceman is eligible for re-enlistment except for a disqualifying factor, obesity. According to Chief of Naval Operations Instruction 1160.5B, an RE–4 re-enlistment code *can be assigned for a number of reasons,* one of which is "not recommended for re-enlistment by commanding officer." An RE–4 re-enlistment code indicates that the serviceman is

not eligible for re-enlistment without prior approval of the Commander of the Military Personnel office.

4. In a letter dated August 31, 1990, plaintiff requested an "Admiral's Mast" with the Chief of Information to review LtC Coley's recommendation to deny re-enlistment. The Chief of Information was the first flag officer above plaintiff in his chain of command. The request was forwarded instead to the civilian director of the Naval Broadcasting Service, who in turn directed the CO to hold a "request mast," to determine the validity of Mr. Land's complaint. This request mast resulted in the CO's recommendation to extend Land's enlistment and give him an opportunity to improve his performance.

ration of enlistment. At this point, Mr. Land was assigned a re-entry code of RE–4.

On June 15, 1992, Mr. Land applied for relief from the Board for Corrections of Naval Records (BCNR), seeking: (1) a change in his re-enlistment code from RE–4 to either RE–1 or RE–3T; (2) adjustment of his date of discharge from September 27, 1990, to December 27, 1990, in accordance with his request for a ninety-day extension of his enlistment; (3) severance pay to which Mr. Land would have been entitled had his extension request been granted; and (4) modification or removal of an adverse performance evaluation covering the period of April 17, 1990, until September 27, 1990.

The BCNR requested advisory opinions from two different divisions of the Bureau of Naval Personnel regarding Mr. Land's requests for relief: the Favorable Separations Division and the Enlisted Evaluations Branch. On August 6, 1993, the deputy director of the Favorable Separations Division recommended denial of Mr. Land's request to have his re-enlistment code changed. The deputy director's advisory opinion noted that the RE–3T code would have been inappropriate because it provides that the member is eligible for re-enlistment "with a disqualifying factor—obesity." At the time of his separation, Mr. Land was in the "overfat" rather than the obese category. However, the deputy director also noted that Mr. Land had a long history of failing to meet weight standards as well as having other negative performance evaluations in his record and that his commanding officer did not recommend him for re-enlistment. The deputy director ultimately concluded that assignment of the RE–4 re-enlistment code was appropriate because, although it is more onerous, it is also broader in scope.[5]

On September 8, 1993, the head of the Enlisted Evaluations Branch recommended that the BCNR deny Mr. Land's request to have his performance evaluations for the periods of March 6 through April 16, 1990, and April 17 through September 27, 1990, changed. The advisory opinion stated: "The

reports provide an overall view of the member's performance, giving specific comments on his achievements, potential and deficiencies. The comments are at the discretion of the reporting senior and are not routinely open to challenge.... We recommend retention of the reports."

After reviewing the advisory opinions and Mr. Land's record, on September 12, 1994, the BCNR issued a final report to the Office of the Secretary of the Navy recommending that Mr. Land be granted partial relief. With respect to Mr. Land's re-enlistment code, the BCNR noted that the RE–3T re-enlistment code was normally assigned when a member was discharged or denied re-enlistment due to obesity and that Mr. Land was merely "overfat" at the end of his term of enlistment and therefore technically did not qualify for assignment of an RE–3T. The Board agreed with the Bureau of Naval Personnel that, in cases like Mr. Land's, denial of re-enlistment was appropriate in light of the performance deficiencies in his record. However, the Board felt that the primary reason Mr. Land was denied re-enlistment was his continuous struggle meeting Navy weight requirements. The Board remarked that:

> [I]t did not make sense ... that the less stigmatizing RE–3T Re-enlistment code could be assigned to an individual who is denied re-enlistment due to obesity, but not to an individual denied re-enlistment due to being overfat. Therefore, in this case an RE–3T Re-enlistment Code is appropriate since it would allow, but not require, Petitioner's re-enlistment if he can meet the weight standards.

Hence, the Board recommended retroactive change of Mr. Land's re-enlistment code to an RE–3T even though that assignment was technically in violation of Navy regulations. The BCNR also recommended that Mr. Land's military records be changed to reflect that he was discharged on December 27, 1990, instead of September 27, 1990, thereby making him eligible for severance pay. The later discharge date would have kept Land

---

5. He also recommended the denial of Mr. Land's petition for an extension of his enlistment period for ninety days.

on the payroll until after the adoption of regulations giving enlisted men severance pay at the conclusion of their enlistment period.[6] Although it pointed to no specific procedural error, it found that:

> [G]iven all the circumstances of the case, the recommendation by the Commanding Officer of the Naval Station for an extension of enlistment should have been accepted as if it had been made by the [Chief of Information]. Therefore, the Board concludes that Petitioner's enlistment should have been extended for 90 days until 27 December 1990.

If he had been given the extension, Mr. Land would have later ended his enlistment at a time when he would have been eligible for severance pay.

On review of the BCNR's recommendations, the Principal Deputy Assistant Secretary of the Navy for Manpower and Reserve Affairs (the Assistant Secretary) agreed that the denial of the request for re-enlistment was appropriate and also agreed with the recommendation that Mr. Land's re-enlistment code should be changed to RE–3T instead of the more stigmatizing RE–4. The Assistant Secretary disagreed, however, with the recommendation to change Mr. Land's discharge from September 27, 1990, to December 27, 1990. The Assistant Secretary stated in her review that:

> [E]xtending Petitioner's enlistment would have, in hindsight, allowed him to qualify for severance pay is not a relevant consideration. The Navy adjusts pay and retention policies on a regular basis. Petitioner's situation is no different than all of the other service members who were discharged prior to the implementation of severance pay. I find no error or injustice warranting relief with respect to this aspect of Petitioner's record.

Mr. Land brought this action on June 27, 1997, challenging the Assistant Secretary of the Navy's decision. Mr. Land asks this court to: (1) declare that his discharge date was December 27, 1990, thereby invalidating

his discharge at the end of his term of enlistment on September 27, 1990; (2) declare that he should have been re-enlisted on December 27, 1990, for another four year term; and finally (3) award him the attendant back pay and severance pay.

## DISCUSSION

■ It is a well established principle that "[n]o one has an individual right, Constitutional or otherwise, to enlist in the armed forces, the composition of those forces being within the purview of the Congress and the military." *Maier v. Orr*, 754 F.2d 973, 980 (1985) (citing *Gilligan v. Morgan*, 413 U.S. 1, 6, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir.1981)). Absent proof of a statutory right to re-enlist, the government's obligation to pay a service member terminates at the expiration of their term of enlistment. *See Maier*, 754 F.2d at 980; *Austin v. United States*, 206 Ct.Cl. 719, 724, 1975 WL 22844 (1975); *Gove v. United States*, 24 Cl.Ct. 296 (1991); *McEniry v. United States*, 7 Cl.Ct. 622, 626 (1985).

■ This court therefore has jurisdiction to review a denial for re-enlistment only when the serviceman "can base his claim on a statute or regulation that gives him the right to pay beyond the term of his enlistment, or in effect, gives him a right to reenlist." *Gove*, 24 Cl.Ct. at 301; *see also Austin*, 206 Ct.Cl. at 724. Mr. Land was paid in full through the expiration of his last term of enlistment in the Navy. The applicable statute provides that: "A person discharged from a Regular component may be reenlisted in the ... Regular Navy ... under such regulations as the Secretary concerned may prescribe." 10 U.S.C. § 508(b) (1994). This language provides broad discretionary power to the Secretary. *See Gove*, 24 Cl.Ct. at 302 (citing *Williams v. United States*, 541 F.Supp. 1187, 1191 n. 9 (E.D.N.C.1982)). As explained below, Mr. Land has provided the court with no statute or regulation giving

---

6. Bureau of Personnel Instruction 1900.7, dated August 20, 1991, authorized separation pay under certain circumstances for enlisted men involuntary separated from active duty. It was retroactive to November 5, 1990. At the time of his discharge, Mr. Land was not eligible for severance pay.

him a firm right to re-enlist or extend that period of enlistment.

According to Mr. Land, both the directive by NMPC issued on September 17, 1990, to separate him with a re-enlistment code of either RE–3T or RE–4 as appropriate, and the negative recommendation by LtC Coley violated Chief of Naval Operations Instruction (OPNAVINST) 6110.1D. OPNAVINST 6110.1D states that a service member who measures "overfat" three or more times is eligible for retention. He asserts that LtC Coley's negative recommendation was based on an erroneous determination that he failed to meet the Navy weight requirements of OPNAVINST 6110.1D. Therefore, the RE–4 re-enlistment code was wrongfully assigned at the time he was separated.

■ It appears that at the time his re-enlistment code was assigned, Mr. Land was indeed not obese, but merely "overfat." However, simply meeting the qualifications under OPNAVINST 6110.1D for re-enlistment *eligibility,* does not confer on a serviceman an absolute right to re-enlist. It merely states that, if a serviceman meets certain physical fitness requirements, then he will be eligible for re-enlistment.[7]

■ More importantly, neither OPNA-VINST 6110.1D nor Mr. Land's being overfat preclude an assignment of an RE–4 re-enlistment code. OPNAVINST 1160.5C outlines the basis for the RE–4 re-enlistment code which was assigned and effectively barred Mr. Land's re-enlistment. The regulation states that members in all pay grades who fail to,receive a positive recommendation from their CO qualify for assignment of an RE–4. *See* OPNAVINST 1160.5C. Lieutenant Commander Coley did not recommend him for retention in the Navy. There is no basis

for the court to re-evaluate that determination. Indeed the BCNR found that Mr. Land was deficient in terms of his working relationship with his superiors, improper attire, mediocre script writing, and poor supervision. With respect to his weight problems, it recognized that he was in a highly visible position. The RE–4 re-enlistment code was therefore appropriately assigned. Mr. Land has not presented the court with a basis in law to assign him a different re-enlistment code, nor has he supplied a regulation entitling him to re-enlist even under the RE–3T code.[8]

Mr. Land also asserts that the Navy violated sections 1106 through 1108 of the Judge Advocate General Manual. These sections deal with the handling of complaints by any member of the armed services who believes he has been wronged by a CO. Although Mr. Land requested an "Admiral's Mast," as defendant points out, the regulations cited do not specifically grant a right to be heard by an admiral. Instead, a serviceman is entitled to communicate with a superior officer. The regulations are specific, however, in requiring the complaining serviceman to make certain assertions or meet certain conditions. In view, particularly, of the informality of Mr. Land's request and the fact that the Chief of Information was across the country, it is neither surprising nor actionable that Mr. Land was referred to the CO for the San Diego Naval Station. It is, in any event, the CO's favorable recommendation that he wishes to have the court adopt. Moreover, no particular result is required after an Admiral's Mast, nor are any rights conferred upon those requesting such procedures, other than to communicate with a superior officer at the appropriate time and place. There is

---

7. In its final report to the Secretary, the BCNR stated that denial of Mr. Land for re-enlistment at the time of his separation was appropriate based on the performance deficiencies in Mr. Land's record. The BCNR acknowledged that an assignment of an RE–3T re-enlistment code was technically inaccurate since Mr. Land was not obese at the time of his separation, but merely "overfat". However, the BCNR changed Mr. Land's record to reflect a re-enlistment code of RE–3T, which allows, but does not require, Mr. Land to re-enlist, but for the disqualifying factor of obesity.

8. Unlike the court, the BCNR and the Assistant Secretary can bring purely equitable considerations to bear in reviewing military personnel disputes. Thus, even though the RE–3T code may not have been legally compelled, those reviewers had discretion to adjust the discharge code. The fact that he was granted that relief, however, does not mean that Mr. Land is automatically entitled to retention or re-enlistment.

no reason to assume the Chief of Information would have acted favorably, if at all.

Even assuming plaintiff is correct that the procedures followed were erroneous, this would not provide a sufficient basis for this court to order a retroactive re-enlistment or to extend his initial term of enlistment and award him back pay. In the absence of a statute or regulation entitling him to re-enlistment, the plaintiff can point to no more than the expiration of his term of enlistment. *See Davis v. U.S.*, 196 Ct.Cl. 517, 1971 WL 17832 (1971) (holding that court lacked power to grant an extension of the enlistment period or to re-enlist the plaintiff even though an erroneously given general discharge had prevented his re-enlistment); *Gove*, 24 Cl.Ct. at 303 ("Congress, for sound policy reasons has legislated that the military in its discretion determines who can enlist and re-enlist and restricts judicial relief to the period of enlistment.").

## CONCLUSION

Mr. Land has been paid in full for his last period of enlistment ending on September 27, 1990. He has no statutory or regulatory right to re-enlistment or an extension of enlistment. The defendant's motion to dismiss is granted. The clerk is directed to dismiss the complaint. No costs.