Davis, Judge,
delivered the opinion of the court:
John Samuel Austin, then a Navy enlisted man, was discharged in December 1969 with a general discharge, under honorable conditions, for misconduct. He has petitioned this court for a correction of his military records to delete the discharge, and also for an award of back pay. Both sides have asked for summary judgment.
The record shows that Austin was serving his third enlistment in the Navy when, on June 19, 1965 while on leave, he was arrested by Mexican authorities at Tijuana and charged with possession of and trafficking in morphine. He and a Mexican national were subsequently convicted by a Mexican court of the trafficking charge and Austin was sentenced to a Mexican jail for four years from the date of his arrest. On October 18, 1966, having posted a substantial bond, he was released from the foreign jail and returned to his duty station at the Naval Missile Center, Point Mugu, California. For the period of his Mexican confinement, he was listed as on unauthorized absence, and was not given his *722 Navy pay. In addition, bis enlistment was extended 484 days to end on March 24,1969, to make up for the time lost.
After his return to naval duty, Austin was processed for an administrative discharge by a Navy Board of Officers under a section of the Navy Personnel Manual making such processing for possible discharge mandatory for those convicted “by civil authorities (foreign or domestic) * * * of an offense for which the maximum penalty under the Uniform Code of Military Justice is death or confinement in excess of 1 year; * * *” 82 C.F.R. § 730.13(b) (1) (1974). This board, before which plaintiff appeared (represented by both military and civilian counsel) and testified, recommended that he be given an undesirable discharge because of the Mexican conviction. The Chief of Naval Personnel originally approved this recommendation, but in December 1969, he ordered the character of the discharge changed to general, under honorable conditions, and plaintiff was given such a discharge, which included a code meaning that he was not recommended for reenlistment.
Plaintiff asserts in this action, as he has in several District Court suits brought to prevent his discharge, that the Navy acted improperly in separating him, because the discharge was based entirely on the Mexican conviction even though he had presented to the Board of Officers evidence that the conviction was primarily obtained through use of a confession extracted from him by torture. The Board of Officers appeared to be strongly of the view that it could not go behind the Mexican conviction or pass in any way upon Austin’s allegations that that conviction was obtained in a foreign country under conditions wholly incompatible with concepts of natural law and fundamental fairness.
This is not an easy problem to unravel but we find that we need not even consider it because the court is without authority to reach that issue. The reason we have no power to assess the underlying substantive issue is that, even if plaintiff were to prevail on his claim that the Mexican conviction could not rightly be the basis for his discharge, we could not award him any back pay or other money compensation or damages. It is of course a cardinal principle of *723 our jurisprudence that the only suits of which we have jurisdiction under 28 U.S.C. § 1491 (Supp. III, 1973) (our general jurisdictional statute) are those in which the plaintiff seeks and can seek a money judgment. We may not give any relief unless “the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; * * * [or he alleges] that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum.” Eastport S.S. v. United States, 178 Ct. Cl. 599, 605, 372 F. 2d 1002, 1007 (1967). Conversely, it is now firmly established that, since the general jurisdiction of this court is limited to money claims against the Government, we have no authority to enter a declaratory judgment, or to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award. United States v. King, 395 U.S. 1, 5 (1969); Jankovic v. United States, 204 Ct. Cl. 807 (1974). The affirmative relief permitted by the first sentence of Public Law 92-415, the Act of August 29, 1972, 86 Stat. 652,[1] can be given only where a money judgment is entered; that is the “judgment” of which the statute speaks. See Jankovic v. United States, supra.
Why is it that we cannot grant this plaintiff a money judgment if he should win on the merits of his claim? In the decisions dealing with enlisted personnel, the court has consistently held that since these servicemen have no right to reenlist at the expiration of their current enlistments, the United States has undertaken to pay them only to the end of the current enlistment, unless it properly discharges them prior to that time. Rowe v. United States, 167 Ct. Cl. 468, 470-72 (1964), cert. denied, 380 U.S. 961 (1965). Thus, for example, in Clackum v. United States, 148 Ct. Cl. 404, 296 F. 2d 226 (1960), where we found the discharge invalid because of the grossest sort of procedural and constitutional, irregularity, 148 Ct. Cl. at 409-10, 296 F. 2d at 229, we lim *724 ited recovery to the period between the time of the illegal discharge and the end of that plaintiff’s then-current enlistment. 161 Ct. Cl. 34, 36 (1963). See also to the same effect, Murray v. United States, 154 Ct. Cl. 185, 191 (1961); Sofranoff v. United States, 165 Ct. Cl. 470, 479 (1964); O'Callahan v. United States, 196 Ct. Cl. 556, 559-62, 451 F. 2d 1390, 1392-93 (1971).
In two cases we did find that an enlisted man had a firm right to reenlist, and therefore that his recovery did not end with the termination of his then enlistment. See Diamond v. United States, 170 Ct. Cl. 166, 344 F. 2d 703 (1965); Smith v. United States, 155 Ct. Cl. 682 (1961). However, as pointed out in O'Callahan v. United States, supra, 196 Ct. Cl. at 561-62, 451 F. 2d at 1393, both those holdings were grounded in special statutory rights of reenlistment. While we would be inclined to the same result if the Navy had bound itself by regulation to an automatic right of reenlistment, see Service v. Dulles, 354 U.S. 363, 388 (1957); United States v. Nixon, 418 U.S. 683, 695-96 (1974), we have not been cited to nor have we in our own research found any statute or regulation which would give this plaintiff such a mandatory right to reenlist.
This rule that back pay is confined to the current enlistment — in the absence of a mandatory right to reenlist — puts Austin’s demand beyond our power to remedy. By various legal proceedings he delayed his actual discharge (December 24, 1969) nine months beyond the scheduled end of his enlistment, as extended (March 24, 1969). He was in fact paid to the later date and therefore now has no money claim against the Government.[2]
We have considered, in this connection, the point that plaintiff might possibly have a valid claim (if he is right as to the status of the Mexican conviction) for the 484 days for which he was not paid while he was in jail in Mexico, but have concluded that such a claim is unsound under the gov *725 erning statutes and regulations. Section 503(a) of title 37 of the U.S. Code states that
A member of the Army, Navy, * * * who is absent without leave or over leave, forfeits all pay and allowances for the period of that absence, unless it is excused as unavoidable.
This provision is in. the title of the Code dealing with pay, and not that concerned with punishment. Its statutory background is in pay legislation where, for example, absence with authorization in excess of that allowed by statute is similarly treated. See Act of Aug. 9, 1946, ch. 931, § 4, 60 Stat. 964; Act of Aug. 4,1947, ch. 475, § 1, 61 Stat. 748. The section is clearly nonpunitive; it is meant merely to withhold pay from servicemen for time during which, on their own, they are not available for duty.
Correlative to 37 U.S.C. § 503(a) are the provisions authorizing an extension of service to make up lost time. The pertinent Navy regulation is 32 C.F.R. § 730.4a (1974), based on 10 U.S.C. § 972 (1970), which allows the Service to require an enlisted man to make up time lost when he, among other things:
(2) is absent from his organization, station, or duty for more than one day without proper authority, as determined by competent authority;
(3) is confined for more than one day while awaiting trial and disposition of his case, and whose conviction has 'become final;
(4) is confined for more than one day under a sentence that has become final; * * *
The history of this statute indicates that its purpose was to discourage any sort of absence by which a serviceman, by his own injudicious conduct (including, for example, intemperate use of liquor), makes himself unavailable for duty. See Act of July 24, 1956, ch. 692, 70 Stat. 631; Act of June 4, 1920, ch. 227, Art. 107,41 Stat. 809; S. Rep. No. 2549, 84th Cong., 2dSess. (1956).
In this case the Navy could rightly find that, on any view of the facts, plaintiff’s absence was not unavoidable and that he was absent without proper authority while detained in Mexico. Even if the Mexican conviction is deemed in itself *726 to be an improper basis for loss of pay and extension of service, the undenied fact is that Austin, of his own choice, was in Mexico in connection with drug activities and that he was arrested there while in the course of trying to arrange a transfer of narcotics. He insists that he engaged in these activities solely in order to entrap others and to receive the bounties available for turning smugglers over at the border. Whether or not his motives were so law-abiding, there is no doubt that plaintiff, not a narcotics agent or a member of the Naval Intelligence Service, had no duty to engage in such activities, and that he therefore absented himself from his post by his own actions, combined of course with the bad luck of his having picked an FBI agent to attempt to entrap. We think, therefore, that the statutes and regulations were properly applied in his case, and he does not have a valid claim for payment for the 484 days.
On this basis, we grant the defendant’s motion for summary judgment, deny the plaintiff’s motion, and dismiss the petition. Plaintiff is, of course, free to bring suit for the declaratory relief we are unable to grant in the appropriate federal district court.

 “To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."

 While plaintiff held an ATI pay rating prior to his Mexican adventures, ho was reduced to ATR2 by non-judicial punishment in November 1966, and served out his enlistment at that rate. Plaintiff has not contested in this court this non-judicial punishment and demotion, and we do not consider the possibility that that action might have raised a monetary claim.