Terrence L. ADKINS, Plaintiff–Appellant,

v.

The UNITED STATES, Defendant–
Appellee.

No. 94–5029.

United States Court of Appeals,
Federal Circuit.

Oct. 17, 1995.

Barry P. Steinberg, Jordan, Coyne & Savits, Washington, DC, argued for plaintiff-appellant. Of counsel, Jayson L. Spiegel.

Frank W. Hunger, Assistant Attorney General, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC. John S. Groat, Attorney, argued for defendant-appellee. Of counsel, David M. Cohen, Director, James M. Kinsella, Assistant Director.

Before NIES, MAYER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Appellant, Terrence L. Adkins, a retired lieutenant colonel in the United States Army, appeals from the October 28, 1993 judgment of the United States Court of Federal Claims, dismissing his complaint on the ground of nonjusticiability. *Adkins v. United States,* 30 Fed.Cl. 158 (1993). In his complaint, Adkins challenged the decision of the Secretary of the Army ("Secretary") rejecting the recommendations of the Army Board for Correction of Military Records ("ABCMR" or "Board") that certain material be removed from Adkins's Official Military Personnel File ("OMPF") and that all obstacles to Adkins's restoration to the 1988 Colonel Army Promotion List be removed. The Secretary had removed Adkins from the promotion list based upon the recommendation of the Army's Promotion Review Board ("PRB"). In the Court of Federal Claims, Adkins sought reinstatement to active duty, back pay and allowances, and an order directing the Secretary to promote him to colonel. In addition to urging affirmance, the government contends that the court lacked jurisdiction to adjudicate Adkins's claims. We conclude that the Court of Federal Claims has jurisdiction and that, to the extent indicated below, Adkins has presented a

justiciable controversy. Accordingly, we affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

The pertinent facts are not in dispute. Adkins was selected for promotion to colonel from the 1988 Colonel Army Promotion List. 30 Fed.Cl. at 159. At the time the selection board chose him for promotion, however, it was unaware of certain facts. First, prior to Adkins's selection, the Army had conducted an investigation pursuant to Army Regulation ("AR") 15–6 into Adkins's alleged falsification of his Medical Flight Status. This investigation led to a letter of reprimand. *Id.* Second, the selection board did not have before it two Officer Evaluation Reports ("OERs"). One was for the period from November 19, 1987, to May 1, 1988, and contained negative comments about Adkins's ethics, judgment, and command skills. *Id.* The other was a "relief for cause" OER for the period from May 2, 1988, to June 27, 1988, which Adkins received upon being relieved of his command. *Id.* Finally, between June 1988 and July 1988, Adkins was the subject of an AR 15–6 investigation relating to an aircraft accident. This second investigation also led to a letter of reprimand. *Id.*

Eventually, the PRB discovered these oversights. As a result, on December 12, 1988, after the United States Senate had confirmed his promotion to colonel, the Promotions Branch of the Army Personnel Command advised Adkins that the PRB would reconsider his promotion list status. *Id.* When it subsequently met, the PRB had before it the two adverse OERs and the two investigative reports noted above. Upon reconsideration, the PRB recommended that the Secretary remove Adkins from the Colonel Army Promotion List. *Id.*

In the interim, Adkins had appealed the negative OERs to an Officer Special Review Board, which removed the "intermediate rater" and "senior rater" portions of the first OER and substituted a redacted OER in Adkins's OMPF.[1] *Id.* However, the PRB did not consider the redacted OER, and in rendering its reconsideration decision removing Adkins from the promotion list instead relied on the original November 19, 1987, to May 1, 1988, OER. *Id.* For that reason, the Secretary deferred decision on the PRB's recommendation and directed that a second PRB consider Adkins's promotion list status using the redacted OER. *Id.* The Secretary also directed the PRB to remove the "relief for cause" OER from Adkins's OMPF. *Id.*

The second PRB had before it the rater portion of the first OER and the reports from the two AR 15–6 investigations that had resulted in letters of reprimand. *Id.* Based on this information, the second PRB also recommended, on June 26, 1991, that Adkins be removed from the Colonel Army Promotion List. *Id.* The Secretary removed Adkins from the promotion list on July 22, 1991. *Id.*

In due course, Adkins appealed the remaining negative information in his OMPF to the ABCMR. In a decision dated October 9, 1991, the Board agreed that the rater portion of the first OER did not represent a "fair, objective and valid appraisal" of his performance. *Id.* Regarding the AR 15–6 investigations, the Board was not convinced that Adkins had failed to demonstrate the professional ethics required for promotion to colonel, and in fact was persuaded "based on the applicant's overall record, ... that he could and would serve the Army well as a colonel." Accordingly, the Board recommended that "all of the Department of the Army records related to [the] case be corrected: first, by voiding the rater's portion of the first OER; second, by removing the OER from Adkins's OMPF; and third, by removing all obstacles to [Adkins's] restoration to the FY1988 Colonel, Army Promotion List, including any references in his Official Military Personnel File to the Army Regulation 15–6 investigations conducted in August–October 1987 and in June–July 1988." *Id.*

Before the Secretary had acted on the ABCMR's recommendations, however, the Army Personnel Command notified Adkins on March 18, 1992, that he had been selected for mandatory early retirement pursuant to

---

1. An OER comprises three separate portions: a "rater" portion, an "intermediate rater" portion, and a "senior rater" portion. The "rater" por-

tion, therefore, was the only portion of the first OER that remained in the redacted version placed in Adkins's OMPF.

10 U.S.C. §§ 638, 638a (1994) because he had been passed over for promotion to colonel and was not presently on a promotion list.[2] The notice stated that Adkins's retirement date would be August 31, 1992, unless he voluntarily selected an earlier date. Thereafter, on March 25, 1992, pursuant to AR 635–100, ¶ 4–13,[3] and as authorized by 10 U.S.C. § 3911 (1994),[4] Adkins requested "voluntary retirement" effective July 1, 1992, which date he later changed to August 1, 1992. On May 28, 1992, the Secretary rejected the recommendations of the ABCMR and enforced the recommendation of the second PRB to remove Adkins from the Colonel Army Promotion List. *Id.* at 160. Adkins was thereafter retired on his selected date. *Id.*

Following his retirement, Adkins brought suit challenging the Secretary's action in the United States District Court for the Eastern District of Virginia. That court transferred the suit to the Court of Federal Claims, where Adkins filed an amended complaint on March 12, 1993. *Id.* In his amended complaint, Adkins alleged that, "[w]hile awaiting the Secretary's implementation of the ABCMR recommendation that he be promoted," he was compelled to submit his request for voluntary retirement because otherwise he would have been involuntarily retired, "which would have adverse connotations for employment consideration." Adkins claimed that the Secretary's rejection of the recom-

mendations of the ABCMR was "arbitrary, capricious and without foundation in law or fact." He sought reinstatement to active duty, back pay and allowances, and an order directing the Secretary to promote him to colonel as of February 1, 1990.

The government filed a motion to dismiss for failure to state a claim upon which relief could be granted, which the Court of Federal Claims treated as a motion for summary judgment. *Id.* at 158 n. 1. In ruling on the motion, the court concluded that it had jurisdiction to hear Adkins's claim because his retirement was, in legal effect, involuntary, despite Adkins's representation that it was "voluntary" in his retirement request.[5] *Id.* at 161–62. Having determined jurisdiction was appropriate, however, the court held that Adkins's claim presented a nonjusticiable political question. The court believed that that result was compelled in view of the deference traditionally accorded by the judiciary to military decisions, and in view of the fact that there were no judicially discernible standards by which to judge the Secretary's conduct. *Id.* at 164. Accordingly, the court dismissed Adkins's complaint. *Id.*

## DISCUSSION

### I. *Jurisdiction*

#### A.

■ "[J]urisdiction being a question of law," *Transamerica Ins. Corp. v. United*

---

2. Entitled "Selective Early Retirement," 10 U.S.C. § 638 provides that an active-duty officer may be considered for selective early retirement if, *inter alia*, the officer is a "lieutenant colonel ... who has failed of selection for promotion to the grade of colonel ... two or more times and whose name is not on a list of officers recommended for promotion." 10 U.S.C. § 638(a)(1)(A) (1994). Section 638(a)(3) specifies that 10 U.S.C. § 638a provides additional bases for early retirement selection—e.g., where the officer in question has "failed of selection for promotion only one time (rather than two or more times)." 10 U.S.C. § 638a(b)(2)(A) (1994). Because Adkins was selected for early retirement after being passed over for promotion only once, section 638a(b)(2)(A) is the operative provision in this case.

3. In pertinent part, AR 635–100, ¶ 4–13 (June 1, 1989) states:

   (1) A Regular or Reserve commissioned officer of the Army who has at least 20 years of [active full-time service], at least 10 years which have

been active service as a commissioned officer, may, on his or her application and, in the discretion of the Secretary of the Army, be retired (10 USC 3911).

4. In pertinent part, 10 U.S.C. § 3911 (1994) provides:

   (a) The Secretary of the Army may, upon the officer's request, retire a regular ... commissioned officer of the Army who has at least 20 years of service ..., at least 10 years of which have been active service as a commissioned officer.

5. Adkins's initial retirement memorandum, dated March 25, 1992, was entitled "Voluntary Retirement." In pertinent part, the memorandum stated:

   Under the provisions of law cited in paragraph 4–13, AR 635–100, I request that I be relieved from active duty and assignment on 30 June 1992 and placed on the retired list on 1 July 1992.

*States,* 973 F.2d 1572, 1576 (Fed.Cir.1992), we exercise complete and independent review of the Court of Federal Claims' conclusion that it had jurisdiction to entertain Adkins's claim. *See also Coastal Corp. v. United States,* 713 F.2d 728, 730 (Fed.Cir.1983) ("A court always is obligated to consider not only its own jurisdiction but that of the tribunal from which an appeal is taken.").

▮ Adkins alleged jurisdiction under the Tucker Act,[6] pursuant to which he was required to assert a claim against the government under a "money-mandating" constitutional provision, statute, or regulation. *United States v. Connolly,* 716 F.2d 882, 886–87 (Fed.Cir.1983) (en banc). Prior to his retirement, Adkins was entitled to basic pay as "a member of a uniformed service who is on active duty." 37 U.S.C. § 204(a)(1) (1988). If his discharge was involuntary and improper, Adkins's statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction. *See, e.g., Sargisson v. United States,* 913 F.2d 918, 920 (Fed.Cir.1990); *Heisig v. United States,* 719 F.2d 1153, 1155 (Fed.Cir.1983). If, however, Adkins's retirement was "voluntary," he retained no statutory entitlement to compensation, and thus no money-mandating provision would support Tucker Act jurisdiction over his claim. *See Sammt v. United States,* 780 F.2d 31, 32 (Fed.Cir.1985). We agree with the Court of Federal Claims that Adkins's retirement was involuntary, and that it therefore had jurisdiction over his claim.

### B.

▮ Adkins chose a retirement date earlier than the one designated by the Army in the notice of selection for early retirement. The government points to this fact and argues that Adkins's choice of an earlier date rendered the retirement "voluntary," thereby divesting the Court of Federal Claims of jurisdiction over his claim. We disagree.

Adkins was selected for early retirement under 10 U.S.C. § 638a(b)(2)(A). Pursuant to 10 U.S.C. § 638(b)(1)(A), an officer "rec-

ommended for early retirement under ... section 638a" shall "be retired, under any provision of law under which he is eligible to retire, on the date requested by him and approved by the Secretary concerned." Section 638a(e) provides that the "retirement of an officer pursuant to this section shall be considered to be involuntary for purposes of any other provision of law." 10 U.S.C. § 638a(e) (1994). We conclude that Adkins's retirement was "pursuant to" § 638a and therefore involuntary for the purpose of establishing Tucker Act jurisdiction.

After the Army notified Adkins that his retirement date would be August 31, 1992, unless he "voluntarily select[ed] an earlier date," Adkins requested a retirement date of July 1, 1992, which he subsequently changed to August 1, 1992. In short, upon being notified that he was facing mandatory retirement, Adkins selected his preferred retirement date, as expressly permitted by § 638(b)(1)(A). Adkins's actions were wholly consistent with the language of the statute: once an officer is selected for mandatory retirement, the officer may in the first instance select, subject to certain constraints, *see* 10 U.S.C. § 638(b)(1)(A), the effective date of retirement. *See VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed.Cir.1990) ("If ... the language [of the statute] is clear and fits the case, the plain meaning of the statute will be regarded as conclusive."). In view of the circumstances of this case, Adkins's retirement was indisputably "pursuant to" § 638a.

The government argues that Adkins's submission of the memorandum, captioned "Voluntary Retirement," in which he stated that his retirement was "under the provisions of law cited in paragraph 4–13, AR 635–100," *see* note 3, *supra,* conclusively establishes that his retirement was not "pursuant to" § 638a. We disagree. Nothing in AR 635–100, ¶ 4–13, detracts from our conclusion that Adkins retired under § 638a. To the contrary, that regulation is entirely consistent with 10 U.S.C. § 638(b)(1)(A). For example,

---

6. Under the Tucker Act, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitu-

tion, or any Act of Congress or any regulation of an executive department." 28 U.S.C. § 1491(a)(1) (Supp. V 1993).

the use of AR 635–100, ¶ 4–13—which relates to retirement by an officer "upon his or her application"—is one reasonable method for an officer selected under § 638a to request a desired retirement date under § 638(b)(1)(A). Nothing in the language of that regulation limits its applicability to "voluntary" retirements. Moreover, the statement that a request for retirement under AR 635–100, ¶ 4–13, is subject to the "discretion of the Secretary of the Army" parallels the requirement in § 638(b)(1)(A) that the retirement date requested by the officer must be "approved by the Secretary concerned." Thus, the mere fact that Adkins phrased his request for an earlier retirement date under the framework of AR 635–100, ¶ 4–13, in no way suggests that his request was other than "pursuant to" § 638a.

In sum, Adkins's selection of a retirement date earlier than that designated by the Army was consistent with the provisions of § 638(b)(1)(A). We thus conclude that Adkins's retirement was pursuant to § 638a. In view of 10 U.S.C. § 638a(e), this means that Adkins's retirement was, as a matter of law, involuntary. Accordingly, we hold that the Court of Federal Claims had jurisdiction over Adkins's claim.[7]

## II. *Justiciability*

### A.

■ Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy—i.e., the claim is such that the court lacks "ability to supply relief." *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993). A court is said to have such ability when "the duty asserted can be judicially identified and its breach judicially determined, and ... protection for the right can be judicially molded." *Baker v. Carr,*

369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). *See also Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988) ("A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959))). Because "[o]rderly government requires that the judiciary be ... scrupulous not to interfere with legitimate Army matters," *Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), "[j]usticiability is a particularly apt inquiry when one seeks review of military activities." *Murphy,* 993 F.2d at 872. An appellate court decides *de novo* whether a claim challenging a military decision presents a nonjusticiable political question. *See, e.g., Bledsoe v. Webb,* 839 F.2d 1357, 1359 (9th Cir.1988).

### B.

■ The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review. *See, e.g., Orloff,* 345 U.S. at 94, 73 S.Ct. at 540 ("While the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service."); *Murphy,* 993 F.2d at 874 ("[T]he merits of the Air Force's decision to release [this officer] from active duty are beyond judicial reach."); *Sargisson,* 913 F.2d at 922 ("A court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit."); *Doggett v. United States,* 207 Ct.Cl. 478, 482, 1975 WL 22827 (1975)

---

7. Our decision in *Sammt* does not compel a contrary result. The statutory provisions under which Major Sammt was retired (10 U.S.C. §§ 3303(d) and 3913 (1976)) have been repealed and replaced with the Defense Officer Personnel Management Act (DOPMA), Pub.L. No. 96–513, 94 Stat. 2835 (1980) (codified at 10 U.S.C. §§ 611–45 (1994)). Under DOPMA, (i) the date of retirement shall be the "date requested by the [officer] and approved by the Secretary concerned," subject to a maximum time limit, 10 U.S.C. § 638(b)(1)(A); and (ii) the "retirement of an officer pursuant to this section shall be considered to be involuntary for purposes of any other provision of law." 10 U.S.C. § 638a(e) (1994). This court in *Sammt* appropriately refrained from expressing an opinion "on the effect of the change in the law made by [DOPMA]." *Sammt,* 780 F.2d at 33 n.*.

("We have repeatedly refused to interject ourselves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman."); *Heisig*, 719 F.2d at 1156 ("[R]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province...."); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979) ("Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters.").

Not every claim arising from a military decision presents a nonjusticiable controversy, however. This court has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy. *See, e.g., Murphy*, 993 F.2d at 873 ("A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion."); *Dodson v. Department of Army*, 988 F.2d 1199, 1207 n. 7 (Fed.Cir.1993) (reviewing the procedural regularity of the challenged action, but not the substance of the Army's decision); *Sargisson*, 913 F.2d at 921 (although the "statute does not place any procedural or substantive limitations on the Secretary's discretion[,] once the Secretary promulgated regulations and instructions and made them the basis for [the challenged decision,] his action became subject to judicial review for compliance with those regulations and instructions." (citation omitted)); *Voge*, 844 F.2d at 779 ("[T]he Claims Court may review the [challenged] process for compliance with established procedures."); *Koster*

*v. United States*, 231 Ct.Cl. 301, 685 F.2d 407, 412 (1982) (finding jurisdiction to review procedural aspects of a decision of the Secretary of the Army, acting on behalf of the President).[8] Other Circuit Courts of Appeals have recognized a similar distinction. *See, e.g., Watson v. Arkansas Nat'l Guard*, 886 F.2d 1004, 1011 n. 16 (8th Cir.1989) ("[A]djudication of [plaintiff's] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct."); *Kreis v. Secretary of Air Force*, 866 F.2d 1508, 1511 (D.C.Cir.1989) (same).

In cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations. *See Murphy*, 993 F.2d at 873. In such instances, this court does not improperly exercise any discretion reserved for the military; "it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard." *Id.* Thus, we must determine whether Adkins has challenged the procedural aspects of the Secretary's decision based on the alleged violation by the Secretary of a statutory or regulatory standard.

### C.

In his amended complaint in the Court of Federal Claims, Adkins sought an order (i) directing the Secretary to reinstate him to active duty and then promote him to the rank of colonel effective February 1, 1990; and (ii) awarding him the difference between the pay he would have received had he been promoted to colonel and the pay he

---

8. *Compare Murphy*, 993 F.2d at 873 ("[W]hen the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some.") *with Law v. United States*, 11 F.3d 1061 (Fed.Cir.1993). In *Law*, the plaintiff challenged his removal from the list of officers to be promoted to lieutenant commander in the United States Coast Guard. One of the statutes at issue provided that "[t]he President may remove the name of any officer from a list of selectees established under section 271 of this title." 14 U.S.C. § 272(a) (1994). Law argued that, when the

Secretary of Transportation—acting for the President—removed Law's name from the promotion list, the removal was defective because he failed to afford Law various procedural safeguards. In rejecting Law's claim, we quoted § 272(a), and then stated that "Congress has not imposed the procedural limitations on the President's exercise of the authority which appellant asserts. It would be outside our province to create them." *Id.* at 1068. Thus in *Law*, unlike in *Murphy*, the plaintiff alleged no statutory or regulatory standards against which to judge the military's conduct.

received as a lieutenant colonel, for the period from February 1, 1990, to his involuntary retirement. Adkins's prayer that the Court of Federal Claims direct the Secretary to promote him to the rank of colonel plainly was a request for impermissible "interfere[nce] with legitimate Army matters," *Orloff*, 345 U.S. at 94, 73 S.Ct. at 540. Courts will not interject themselves into the promotion process.[9] Apparently recognizing the impropriety of this request, Adkins has abandoned it. He now asks that he be reinstated as a lieutenant colonel and awarded back pay based upon that rank.[10]

As already noted, in his amended complaint, Adkins asserted broadly that the action of the Secretary rejecting the recommendation of the ABCMR was "arbitrary, capricious, violative of applicable law and regulations and without support in either law or fact." On September 13, 1993, following briefing and oral argument on the government's motion for summary judgment, the Court of Federal Claims issued an order directing the parties to file supplemental briefs. Responding to the court's order, Adkins described the basis for his claim:

> [P]laintiff intends to prove that the Secretary made [the decision not to accept the recommendations of the ABCMR] without reviewing the entire record below, and in fact considered evidence outside this administrative record. The Secretary did not review compelling evidence seen by the ABCMR such as a videotape prepared by the late General Richard G. Stillwell. In fact, plaintiff will establish that the Secretary did not even review a complete record

of the proceedings due to an error in transcription. In addition, plaintiff will show that the Secretary continued to rely on the adverse [OERs] which were supposed to have been removed from plaintiff's personnel file.

\* \* \* \* \* \*

The ABCMR recommended that all impediments to plaintiff's promotion to Colonel be removed. Given the facts of this case, such impediments clearly include the [OERs] in question. Thus, the Board implicitly recommended that the [OERs] be removed as an impediment to plaintiff's promotion. The failure of the Secretary to follow this recommendation, which failure was predicated on (1) the consideration of material outside the administrative record without notice or an opportunity for rebuttal by plaintiff, (2) an arbitrary and capricious rejection of the Board's recommendations and (3) consideration of factually erroneous information contained in the [OERs] as demonstrated and found by the ABCMR, constituted, individually and cumulatively, reversible error.

Plaintiff's Memorandum in Response to Court Order of September 13, 1993, pp. 7–8, 22.

Thus, Adkins requests that the Court of Federal Claims review the procedural regularity of the Secretary's refusal to adopt the ABCMR's recommendation to expunge from his OMPF the remaining portion of the first OER and all references to the AR 15–6 investigations.[11] Specifically, he raises pro-

---

9. Moreover, the Court of Federal Claims was without authority to direct the Secretary to promote Adkins to the rank of colonel because such relief would not be subordinate or collateral to a monetary award. *See, e.g. Voge*, 844 F.2d at 781; *Austin v. United States*, 206 Ct.Cl. 719, 723, 1975 WL 22844 (1975).

10. At oral argument, after some equivocation, counsel for Adkins responded as follows to the court's questioning:

> Court: I thought you said . . . the result would be to reinstate him on active duty with back pay, or the difference between his retirement pay and his active pay, as a lieutenant colonel. And then, the normal processes of the military would, or should carry him through . . .
> Counsel: That is correct.

Court: . . . promotion to colonel and maybe retirement at that point in time.
Counsel: That is correct.
Court: That was the point. That is the money you want—not the colonel . . . pay.
Counsel: That is correct.

11. Beyond the remaining portion of the first OER and the references to the two AR 15–6 investigations, it is not clear to what the Board was referring when it recommended that "all of the Department of the Army records related to this case be corrected" by the removal of "all obstacles to [Adkins's] restoration to the FY 1988 Colonel, Army Promotion List." Aside from the items just noted, Adkins has not pointed to any other material that he claims should be removed from his Army records.

cedural challenges to the Secretary's decision based on a statute and a regulation. We hold that, in so doing, Adkins has presented a justiciable controversy.

The Secretary's decision-making process for the correction of military records, and for the resolution of claims incident thereto, is governed by 10 U.S.C. § 1552(a)(1) (1994), which provides:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.... [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

We have consistently interpreted this section as subjecting the procedural aspects of a military record correction decision to judicial scrutiny. *See, e.g. Arens v. United States,* 969 F.2d 1034, 1037 (Fed.Cir.1992) (plaintiff bore "the burden of demonstrating ... that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence"). We have held that § 1552 means, among other things, that "the Secretary must base his decision on the record as the board presents it to him." *Selman v. United States,* 723 F.2d 877, 880 (Fed.Cir.1983) (*citing Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416 (1969)). As just seen, Adkins claims that, in rejecting the recommendations of the ABCMR, the Secretary considered evidence outside the administrative record. This claim, under *Selman,* is plainly justiciable. As also just seen, Adkins further claims that he was denied notice and an opportunity to rebut the evidence from outside the record that the Secretary allegedly considered. Under AR 15–185, an applicant before the ABCMR is "assured access to all

official records that are necessary to an adequate presentation of his/her case."[12] Adkins argues that he was not provided access to certain materials used by the Secretary in making his decision. Adkins therefore has presented a justiciable claim in connection with AR 15–185, which also "by [its] nature, ... limit[s] the military's discretion." *Murphy,* 993 F.2d at 873.

The Court of Federal Claims recognized Adkins's contention that the Secretary had considered material outside the administrative record. It appears, however, that the court viewed the contention as being improperly directed to the merits of the Secretary's decision to remove Adkins from the Colonel Army Promotion List. Thus, the court stated:

> [Plaintiff] allege[s] a violation of the regulations governing promotion, but does so in the most general terms.... The court notes, however, that Congress has placed no limitations on the President's power to remove officers from a promotion list.... This unconditional authority has in turn been delegated and subdelegated in its entirety to the Secretary of the Army.... Thus, nothing in the statute or regulations limits the material that the Secretary may consider when deciding to remove an officer's name from the promotion list. Without suggesting agreement with plaintiff's contention that it was error for the PRB to consider the investigative reports, the court finds that nothing restrained the Secretary from doing so.

30 Fed.Cl. at 163–64 (citations and footnote omitted).

Adkins's claim, however, is not based on the Secretary's decision to remove Adkins's

---

12. AR 15–185 reads in relevant part as follows:
    1. *Scope and applicability.* This regulation establishes procedures for making application, and the consideration of applications, for the correction of military records by the Secretary of the Army acting through the Army Board for Correction of Military Records (hereinafter referred to as the Board).

    . . . . .

    15. *Access to records.* a. The applicant will be assured access to all official records that are

necessary to an adequate presentation of his/her case consistent with regulations governing privileged or classified material.

name from the promotion list.[13] Rather, his contention is that the Secretary improperly considered material outside the record in deciding whether to accept the recommendations of the ABCMR relating to the correction of his OMPF.[14] We have seen that there are limitations on what the Secretary may consider when he decides whether to accept the recommendations of the Board in a record correction case. Specifically, as *Selman* teaches, the Secretary must decide the case on the basis of the Board record, and the applicant for correction of records must have access to all official records necessary to the presentation of his case.

In sum, Adkins's claims are justiciable to the extent that he has alleged a breach of a statute or regulation by the Secretary in connection with his decision not to accept the recommendations of the ABCMR.

### D.

█ Adkins has asserted that, if he prevails on appeal and subsequently in the Court of Federal Claims, he will be reinstated in the Army and automatically, by operation of law, promoted to colonel. He is mistaken. We hold only that Adkins has presented a justiciable controversy because he has asserted procedural violations by the Secretary in connection with the Secretary's decision not to accept the recommendations of the ABCMR. Adkins is entitled to have that claim heard in the Court of Federal Claims. If, on remand, the court determines that harmful procedural violations did in fact occur, *see Sanders*, 594 F.2d at 818 (recognizing the concept of harmless error in correction board cases); *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824, 831 (1979)

(same), then Adkins will be entitled to appropriate relief.

If he ultimately prevails in the Court of Federal Claims, Adkins will be entitled to relief equivalent to that afforded an involuntarily discharged service member who prevails in court on a claim of arbitrary and capricious conduct by a service secretary in a record correction case. For example, in *Sanders*, former Air Force Captain Larry Sanders, who had been involuntarily discharged from the service after being twice passed over for promotion to major, brought suit in the Court of Claims after the Air Force Board for the Correction of Military Records denied his request to have his record corrected by removing therefrom certain allegedly improper OERs. We held that "a substantially complete and fair record is a necessary requirement of proper consideration by a selection board." *Sanders*, 594 F.2d at 814. Upon concluding that the OERs that Sanders challenged did not fairly portray his record because they were not prepared as required by regulation, we held that the Air Force had improperly exercised its authority to discharge Sanders after he was twice passed over for promotion on the basis of a record that contained those OERs. Accordingly, we directed that the Secretary of the Air Force remove the challenged OERs from Sanders's record and stated that "upon his corrected record plaintiff be given, if he wishes, restoration to active duty commissioned status and an opportunity for selection in due course by a duly constituted statutory selection board." *Id.* at 820.

In this case, the Army will have been found to have improperly exercised its authority to retire Adkins pursuant to 10

---

**13.** The removal of an officer's name from a promotion list is governed by 10 U.S.C. § 629(a) (1994), which provides in pertinent part: "The President may remove the name of any officer from a list of officers recommended for promotion by a selection board." This authority has been delegated and subdelegated in its entirety to the Secretary. *See* Exec. Order No. 12,396 § 1(b); Memorandum of the Secretary of Defense (Jan. 12, 1993).

**14.** In view of the prayer for relief in Adkins's amended complaint, it is understandable that the Court of Federal Claims took the view it did of Adkins's claim. In addition, in the amended

complaint, Adkins mischaracterized before the court the ABCMR's recommendations. In paragraph 17, Adkins referred to "the ABCMR recommendation that he be promoted." The Board made no such recommendation, however. Although the Board concluded that Adkins "would serve the Army well as a colonel," and that "all obstacles to his being restored to [the promotion list] should be removed," as seen above, its formal recommendations to the Secretary were limited to the correction of "Department of the Army records" by the removal of certain material. [*Id.*]

U.S.C. §§ 638 and 638a—after he was not promoted to colonel following the removal of his name from the promotion list—if it is determined that the Secretary committed harmful error in considering material outside the ABCMR record when he made the decision not to accept the Board's recommendation in Adkins's case. The Army's authority to retire Adkins will have been improperly exercised because the triggering event for the exercise of the authority—Adkins not being promoted to colonel—will have taken place after harmful procedural error in the process of deciding Adkins's application to have removed from his OMPF material that caused his name to be taken off the promotion list.

Under 37 U.S.C. § 204, an officer is entitled to "the pay of the rank he was appointed to up until he is properly separated from the service." *Id.* at 810. If the Court of Federal Claims finds that the Army improperly exercised its authority to retire Adkins, he will be entitled to back pay calculated in accordance with law and reinstatement to the rank of lieutenant colonel from the date of his retirement on August 1, 1992. *See id.* at 820. The Secretary then will have the opportunity to decide anew whether to accept the recommendations of the ABCMR, with Adkins receiving the procedural safeguards to which he is entitled. In short, if Adkins's claim is determined to have merit, he is entitled to the opportunity to stand before the Secretary for a decision rendered on the ABCMR's recommendations without procedural defect, just as a former service member in a *Sanders* situation is entitled to stand before a selection board with OERs that fairly portray his record.[15]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Federal Claims that it had jurisdiction, reverse the judgment of the court dismissing Adkins's complaint as nonjusticiable, and remand the case for further proceedings consistent with this opinion.

---

15. We, of course, express no views on the merits of Adkins's claim of procedural violations by the Secretary in connection with his decision with respect to the Board's recommendations.

COSTS

Each party shall bear its own costs.

AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.

NIES, Circuit Judge, dissenting.

The Secretary of the Army, acting as the alter ego of the President, declined to promote Adkins in 1991 and declined to reverse his decision in 1992. According to the majority, the 1992 decision is reviewable for *procedural* error. I dissent. The President has unfettered discretion in denying a promotion to a military officer under 10 U.S.C. § 629(a). Neither the President's decision to remove Adkins from the promotion list nor his refusal to put him back on the list presents a justiciable controversy. The majority's holding that the President's decision not to reinstate Adkins to the 1988 promotion list is reviewable for procedural error by his alter ego, the Secretary, is astounding. Under binding precedent, heretofore followed by this court, no court may for either substantive or procedural reasons review the exercise of Presidential power over a purely discretionary military decision. *Orloff v. Willoughby*, 345 U.S. 83, 92, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953). As specifically held in *Law v. United States*, 11 F.3d 1061 (Fed.Cir.1993) it is outside the province of this court to create procedural limitations on the exercise of Presidential power respecting promotions of military officers. The majority creates a conflict with this binding precedent.[1]

The majority goes on to hold that, if the Presidential decision not to return Adkins to the 1988 list was procedurally flawed, Adkins was illegally retired under 10 U.S.C. § 638a. This second holding of the majority is essential in order to provide Adkins with the *monetary* claim necessary for suit in the Court of Federal Claims. However, the majority's predicate is untenable. No statute provides a right to judicial review of the President's decision not to promote Adkins. To the con-

---

1. *See, South Corp. v. United States,* 690 F.2d 1368 (Fed.Cir.1982) (first panel decision on an issue of law is binding on subsequent panels).

trary, Congress has given the President complete discretion on this matter in 10 U.S.C. § 629(a). Where the President's statutory power is unrestricted, absent an error of constitutional dimension, the exercise by the President of his authority, directly or through the Secretary, is beyond the reach of judicial power to review substantively or procedurally. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165–66, 2 L.Ed. 60 (1803); *Dalton v. Specter,* —— U.S. ——, ——–—––––, 114 S.Ct. 1719, 1727–28, 128 L.Ed.2d 497 (1994). And unless the President's decision is voided, Adkins was properly retired, and he has no right to reinstatement or back pay.

### Background

On August 1, 1992, Adkins was retired in accordance with the special provisions of 10 U.S.C. § 638.[2] Under § 638a, a special board, the Selective Early Retirement Board (SERB) may select a lieutenant colonel, such as Adkins, for retirement prior to what would be his mandatory date if the officer has been passed over once and his name is not on a list of officers recommended for promotion. 10 U.S.C. § 638a(b)(2)(B) (Supp. II 1990). On July 22, 1991, the President, acting under 10 U.S.C. § 629, through the Secretary of the Army, removed Adkins' name from the 1988 promotion list. Adkins has not been on a promotion list since that date.

On March 8, 1992, SERB notified Adkins of his selection for retirement on August 31, 1992. Adkins alleges no procedural or substantive error in the SERB's selection of him for retirement. He argues that his name should be replaced on the 1988 list because of a decision by the Army Board for Correction of Military Records (ABCMR) *subsequent* to the action by the President which removed his name from the promotion list.

Prior to removal of his name from the promotion list on July 22, 1991, Adkins had applied to the ABCMR for removal of an adverse Officer Evaluation Report (OER) from his official records. At a hearing in October 1991, he also asked for restoration of his name to the 1988 promotion list. The ABCMR gave a favorable recommendation on the purging from his official record of the

OER because the rating officer was not privy to the administrative difficulties of his assignment. Two investigative reports (AR 15–6's) were not part of his Official Military Personnel File (OMPF) but had been considered by the Promotion Review Board (PRB) which recommended his removal from the promotion list. These AR 15–6's do not relate to the time period of the OER. The ABCMR concluded that the incidents in the AR 15–6's, one involving damaging an aircraft and the other falsification of medical reports, while not condoned, did not negate Adkins' professional ethics nor his ability to serve well as a colonel. The ABCMR recommended to the Secretary that the OER be voided and "all obstacles to his restoration to the FY 1988 Colonel, Army Promotion List" be removed "including any references in his Official Military Personnel file to the Army Regulation 15–6 investigations conducted in August–October 1987 and in June–July 1988."

After consideration of the materials supplied by the ABCMR, the Secretary rejected the recommendations, sending the following final decision to the ABCMR:

> After review of the materials pertaining to LTC Terrance [sic] L. Adkins' ABCMR petition, I have determined that the rater's portion of the November 19, 1987, through May 1, 1988, Officer Evaluation Report accurately reflects the rater's view of LTC Adkins' performance, and that the rater's view was reasonable. I have further determined that the materials reveal actions by LTC Adkins that raise serious questions concerning his judgment and integrity. These factors have led me to conclude that the relief recommended by the ABCMR is not warranted or necessary. Thus, the ABCMR recommendations are disapproved and LTC Adkins' petition is denied.

One member of ABCMR dissented from the recommendation on promotion, and properly so. ABCMR has no authority to second guess a President's decision under § 629. The ABCMR reviews decisions of the agency, not the President. The ABCMR's recom-

---

**2.** All citations to statute are to the 1988 edition, unless otherwise noted.

mendation on promotion was simply gratuitous.

### The Dual Roles of the Secretary

The majority's holding rests on the following conflated analysis of the Secretary's decisions on the recommendations of ABCMR:

> In this case, the Army will have been found to have improperly exercised its authority to retire Adkins pursuant to 10 U.S.C. §§ 638 and 638a—after he was not promoted to colonel following the removal of his name from the promotion list—if it is determined that the Secretary committed harmful error in considering material outside the ABCMR record when he made the decision not to accept the Board's recommendation in Adkins's case. The Army's authority to retire Adkins will have been improperly exercised because the triggering event for the exercise of the authority—Adkins not being promoted to colonel—will have taken place after harmful procedural error in the process of deciding Adkins's application to have removed from his OMPF material that caused his name to be taken off the promotion list.

Op. at 1326–27. As is evident, the majority merges the two recommendations of the ABCMR into one, and makes no distinction in the reviewability of the Secretary's action on each of the recommendations. Clearly this is error. The Secretary operates as both an executive branch department administrator and as the President's alter ego, depending on what function the Secretary performs. As stated in *Marbury v. Madison,* 5 U.S. (1 Cranch) at 165–66:

> [W]hether the legality of an act of the head of a department be examinable in a court of justice or not, must always depend on the nature of that act.

> .    .    .    .    .

> [W]here the heads of departments are the political or confidential agents of the executive, merely to execute the will of the president, or rather to act in cases in which the executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable.

Congress has conferred authority on the President to remove names from promotion lists. 10 U.S.C. § 629(a). The statute provides:

> The President may remove the name of any officer from a list of officers recommended for promotion by a selection board convened under this chapter.

Since power to remove a name rests with the President, the Secretary was clearly acting as the President's alter ego under delegated authority when the Secretary removed Adkins from the promotion list.

In contrast, ABCMR is set up pursuant to 10 U.S.C. § 1552(a)(1) (Supp. I 1989) which provides:

> The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Transportation may in the same manner correct any military record of the Coast Guard.

When the Secretary acts under this section, the Secretary is acting as head of the department, not as the alter ego of the President under a delegation of Presidential discretionary authority. Different rules apply respecting justiciability. The Secretary, in rejecting ABCMR's recommendation to correct an officer's records, must act on the record before ABCMR or, if the Secretary has additional information, may refer the matter back to ABCMR for reconsideration. *Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416, 422 (1969).

The cases cited by the majority as authority to review a Presidential decision are inapt. All merely are precedent for reviewing an administrative decision of the Secretary or even less pertinent, of a Correction Board. *See, Murphy v. United States,* 993 F.2d 871 (Fed.Cir.1993) (reviewing Correction Board), *cert. denied,* — U.S. ——, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994); *Dodson v. United*

*States,* 988 F.2d 1199 (Fed.Cir.1993) (same); *Sargisson v. United States,* 913 F.2d 918 (Fed.Cir.1990) (reviewing Correction Board, but not Secretary: "Secretary's compliance with [regulation governing release of reserve officers] is beyond the ken of judicial competence; it is nonjusticiable."); *Voge v. United States,* 844 F.2d 776 (Fed.Cir.1988) (reviewed Correction Board, but held Secretary's discretionary decision to terminate special pay nonjusticiable), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988); *Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407 (1982) (reviewing Correction Board); *Kreis v. Secretary of the Air Force,* 866 F.2d 1508 (D.C.Cir.1989) (Administrative Procedure Act allows review of Correction Board); *Watson v. Arkansas Nat'l Guard,* 886 F.2d 1004 (8th Cir.1989) (Correction Board procedure reviewable).

Only by ignoring the dual roles of the Secretary can the majority find a way to review procedurally the Secretary's promotion denial. Specifically, the majority holds that the Secretary is limited to the ABCMR record, even in acting for the President. Contrary to that view, the Court of Federal Claims correctly held that "nothing in the statute or the regulations limits the material that the Secretary may consider when deciding to remove an officer's name from the promotion list." As stated in *Orloff,* 345 U.S. at 91, 73 S.Ct. at 539; "[T]he President of the United States, before certifying his confidence in an officer and appointing him to a commissioned rank, has the right to learn whatever facts the President thinks may affect his fitness." Here, as in *Orloff,* Congress gave the President absolute discretion under section 629 to decide whom to remove from a promotion list. Even if the President had accepted a procedurally flawed recommendation from a Promotion Review Board, the President's decision is unaffected. As held in *Dalton,* the President's decision cannot be upset because it was based on a procedurally flawed recommendation. —— U.S. at ——, 114 S.Ct. at 1727. No statute or regulation was violated even if the Secretary, acting as the President's alter ego, looked to materials outside the ABCMR record in adhering to his decision. The statute, 10 U.S.C. § 1552(a)(1), and Army regulation which the majority cites apply only to *administrative* —not Presidential—decisions of the Secretary. That the ABCMR made a recommendation supporting Adkins promotion does not make a decision by or for the President reviewable for compliance with those statutory or regulatory procedures.

The majority is in error in holding that the President's exercise of statutorily unfettered discretion can be procedurally flawed either by his alter ego or others. This is precisely the error which caused reversal in *Dalton.* As stated by the *Dalton* Court:

The Third Circuit seemed to believe that the President's authority to close bases depended on the Secretary's and commission's compliance with statutory procedures. This view of the statute, however, incorrectly conflates the duties of the Secretary and Commission with the authority of the President. The President's authority to act is not contingent on the Secretary's and Commission's fulfillment of all the procedural requirements imposed upon them by the 1990 Act. Nothing in § 2903(e) requires the President to determine whether the Secretary or Commission committed any procedural violations in making their recommendations, nor does § 2903(e) prohibit the President from approving recommendations that are procedurally flawed. Indeed, nothing in § 2903(e) prevents the President from approving or disapproving the recommendations for whatever reason he sees fit.

—— U.S. at ——, 114 S.Ct. at 1728.

The President is as unfettered in his decision respecting promotion of a military officer as he is in deciding not to sign the commission of someone he nominated to be a judge. The President's *power* to appoint rests on the Constitution. ART. II, SEC. 2. Any judicial review with the objective of nullifying the Secretary's alter ego decision not to promote an officer treads on executive prerogative and violates the separation of powers.

The majority cites *Koster v. United States,* 231 Ct.Cl. 301, 685 F.2d 407, 412 (1982), for the broad proposition that jurisdiction exists in the predecessor of the Court of Federal

Claims "to review procedural aspects of a decision of the Secretary of the Army, acting on behalf of the President." Op. at 1323. Clearly that case does not support the broad proposition. First, the court was reviewing an administrative decision, not a Presidential decision. In dicta, the court spoke of executive discretion being subject to constitutional review, but that does not concern us in this case. No constitutional violation is asserted here.

Similarly, *Watson*, 886 F.2d 1004, offers no support for the decision here. The court opined, in a footnote, that a district court could review the decision of the *ABCMR*, not the Secretary, for procedural correctness. The merits of the decision not to reinstate the service man into the National Guard was correctly declared nonjusticiable. *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979), merely involved review of a Correction Board. Indeed, *Sanders* illustrates the majority's erroneous analysis.[3]

The majority does not even attempt to distinguish *Law v. United States* from this case. It flagrantly ignores the following ruling of this court:

> Last, appellant argues that the Secretary's action in removing his name from the promotion list was defective because he acted without access to Mr. Law's submissions, without even seeing his service record, without a hearing and without a fair summary of the evidence. Essentially, appellant argues for procedural safeguards against the exercise of the President's discretionary authority under § 272(a). Appellant's argument must be rejected. Section 272(a) does not impede the President's discretion, nor the Secretary's discretion when acting for the President, to remove a name from the promotion list. Section 272(a) states "The President may remove the name of any officer from a list of selectees established under section 271 of this title." Congress has not imposed the procedural limitations on the president's

exercise of the authority which appellant asserts. It would be outside our province to create them. [Footnote omitted.]

11 F.3d at 1067–68. As in *Law,* whether the Secretary did not consider all of Adkins record or considered more than that record or did not follow the procedures applicable to correction of his record on a recommendation of ABCMR does not affect Adkins' removal from or reinstatement to a promotion list.

*Kreis v. Secretary of Air Force,* 866 F.2d 1508, is cited for holding that a court may determine "whether the Secretary's decision-making process was deficient, not whether his decision was correct." Op. at 1323. In *Kreis,* the D.C. Circuit distinguished between a nonjusticiable promotion decision by the Secretary and a Secretary's decision not to correct military records. The latter "more modest claim" was held subject to procedural review. However, a "modest" request, that is, merely for correction of records is insufficient in the Court of Federal Claims.

In *Murphy,* relief was denied by the Claims Court and affirmed on appeal because of the non-justiciability of the relief sought. Citing *Kreis,* this court noted that perhaps Murphy should have sought Administrative Procedure Act review in a district court, because "the Claims Court has no authority to invoke APA." 993 F.2d at 874. As in *Murphy,* correction of records will not reinstate Adkins. Only an error in the SERB action which would negate its decision to retire him would have that effect.

The procedure adopted by Congress for early retirement operates somewhat arbitrarily. The officers considered for early retirement include those passed over who are not on a promotion list. The failure to be on a promotion list may simply be a matter of timing. Further, the statute provides that once a name is removed from a list, the officer must go before another selection board. The statute is very specific on this point.[4] ABCMR's "recommendation" cannot

---

3. Sanders did not seek retroactive selection for promotion by the Correction Board. Instead he sought another opportunity to go before a promotion selection board without defective military records. Unlike Sanders, Adkins seeks not another promotion selection board opportunity, but

he attempts to void the President's decision not to promote him.

4. 10 U.S.C. § 629(c)(1) provides:
   An officer whose name is removed from a list under subsection (a) or (b) continues to be

overcome the statute. Thus, even if Adkins had not retired, Adkins cannot be returned to the 1988 list, as ABCMR recommended, in the face of the statutory requirement. He would, at most, be entitled to have another promotion board take a look. The majority sidesteps setting aside the President's decision to remove Adkins' name from the promotion list, declaring that decision is not the issue. Yet only if that decision is negated can the SERB action become improper and only if the SERB action was *ultra vires* does Adkins have a monetary claim.

In sum, even if the President based his decision not to promote Adkins on a recommendation from the PRB based on improper records, the decision to remove Adkins' name from the promotion list stands and is unreviewable. Given that Adkins was eligible for early retirement under the statute, the action by SERB in selecting Adkins for retirement is unassailable. 10 U.S.C. § 638a. Adkins was properly retired on August 1, 1992, and, therefore, has no monetary claim assertable in the Court of Federal Claims.

### Creation of a Claim against the SERB

But for the majority's rewriting of Adkins' complaint, Adkins clearly set out no justiciable claim. In his complaint, Adkins asked for an order:

1. declaring unlawful the Secretary's rejection of the ABCMR recommendation;

2. directing reinstatement and promotion;

3. ordering back pay equal to the difference of a colonel's pay and what he received as a lieutenant colonel (active and retired); [5]

---

eligible for consideration for promotion. If he is recommended for promotion by the next selection board convened for his grade and competitive category and he is promoted, the Secretary of the military department concerned may, upon such promotion, grant him the same date of rank, the same effective date for the pay and allowances of grade to which promoted, and the same position on the active-duty list as he would have had if his name had not been so removed.

5. Contrary to the majority's opinion, Adkins has not abandoned his request for a promotion. The complaint clearly demands a promotion to the

Noticeably absent from his prayer for relief is any request concerning the SERB. Indeed, the complaint fails to mention anything concerning SERB action which selected him for retirement.

The majority recasts Adkins' complaint to seek his reinstatement as a lieutenant colonel and a claim for the difference between active and retired pay. The majority states that if Adkins prevails on the merits, "the Army will have been found to have improperly exercised its authority to retire Adkins pursuant to 10 U.S.C. §§ 638 and 638a." Op. at 1326–27. That "reasoning" will no doubt come as a great surprise not only to the trial judge but to Adkins. Adkins himself repeatedly disavows improper SERB action. Adkins' brief disclaims the need for reconsideration as follows:

> [T]he government states that LTC Adkins does not challenge the procedural regularity of this selection for retirement pursuant to Section 638. This is a true, but incomplete statement. LTC Adkins argued that he would never have even been before the retirement board but for the Secretary's arbitrary and capricious action in rejecting the ABCMR recommendation [to restore him to the list]. *Because the nature of LTC Adkins['] complaint, and its disposition on motion below, the question of whether his selection comported with procedural regularity was simply not at issue below.*

App. Reply Brief at 17, n. 6 (emphasis added). At oral argument, Adkins' counsel acknowledged that he does not allege that the SERB acted improperly:

> I have no evidence, we are unaware of any basis to believe that what happened before

rank of colonel and back pay as if Adkins had been appointed to that rank. At oral argument the following discussion occurred:

> Court: You [Adkins' counsel] are asking the Secretary to promote him [Adkins]. Do you want to strike that?
> Adkins: No [your honor]. I do not because I believe it would be by operation of law.

The majority overlooks Adkins plain and unambiguous prayer for an order for promotion. Adkins refusal to strike his blatantly improper request for relief, even on appeal, underscores the correctness of the trial court's decision.

the Selective Early Retirement Board was defective in the process that was applied there.

. . . .

The only reason Colonel Adkins was eligible for selective early retirement, the only reason he went before that board is because he was not on a promotion list for full colonel at the time.

The removal of his name from that list is what generated his eligibility.

But we have no basis to allege impropriety in the conduct of the Board. Rather what we suggest is that he shouldn't [have] been there.

Before the trial court, Adkins argued similarly:

Plaintiff's was considered, albeit improperly, by the SERB only after the Secretary removed his name from the promotion list. *But for this removal, plaintiff would not have been eligible for the SERB.*

. . . .

*[T]he Secretary's decision to remove plaintiff from the promotion list served as the catalyst* for plaintiff's erroneous consideration by the SERB pursuant to Section 638(a)(1)(A). In short, if the Secretary had followed the recommendation of this correction board, plaintiff could not have been considered by the SERB.

Plaintiff's Memorandum in Response to Court Order of Sept. 13, 1993, at 13–14 (emphasis added). The trial judge's thorough and reasonable attempts to determine if Adkins was challenging anything besides the President's decision to remove Adkins from the promotion list and adherence to that decision were met consistently with answers that directly challenged the President's decision. As noted above, Adkins' responses to questions posed by this court evoked similar responses. Adkins does not argue that the SERB reviewed improper records. Instead, Adkins argues that he should never have appeared before the SERB because the President should not have removed his name from the promotion list based on an allegedly flawed recommendation to the President. As indicated above, the President's decision not to promote Adkins is unaffected by a procedural flawed recommendation.

Redrafting of the complaint is essential to the majority's decision, because without the made-up prayer for relief which would provide the Court of Federal Claims with Tucker Act jurisdiction, Adkins seeks nothing besides correction of his military records; a classic Administrative Procedure Act claim which falls outside the jurisdiction of the Court of Federal Claims.

Moreover, the ABCMR deliberations did not prevent or delay proceedings by the SERB. Regulations governing the ABCMR explicitly state "application [to ABCMR] will not operate as a stay of any proceedings being taken with respect to the person involved." 32 C.F.R. § 581.3(c)(4) (1994). No amount of redrafting of Adkins' complaint can change the fact that Adkins was lawfully retired by the Army. The Army properly removed him according to 10 U.S.C. § 638a.

*Conclusion*

For the forgoing reasons, I would affirm the judgment of the Court of Federal Claims.